FILED

2021 Jan-27 PM 12:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CAROLYN ROBINSON,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 2:19-cv-00856-ACA** |
| | ] | |
| **WAL-MART STORES EAST, LP,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

Carolyn Robinson is an African-American pharmacist employed by Walmart Stores East, LP's ("Walmart") from 2005 until her termination in 2018. Ms. Robison was 51-years old when Walmart fired her. After her termination, Ms. Robinson filed suit against Walmart, asserting claims of race discrimination in violation of Title VII and 42 U.S.C. § 1981 and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). Before the court is Walmart's motion for summary judgment and motion for partial judgment on the pleadings (doc. 32) and motion to strike (doc. 44).

The court **DENIES** Walmart's motion for partial judgment on the pleadings because Ms. Robinson's complaint states a claim for discrimination in discipline. The court **GRANTS** Walmart's motion for summary judgment on Ms. Robinson's claims of race discrimination because Ms. Robinson has not presented a prima

facia case of race discrimination and even if she had, she has not presented evidence creating a dispute of material fact about whether Walmart's articulated reasons for disciplining and firing her were pretext for unlawful race discrimination. The court **GRANTS** Walmart's motion for summary judgment on Ms. Robinson's age discrimination claim because she has not presented evidence from which a reasonable jury could find that Walmart's articulated reason for firing her was pretext for unlawful age discrimination.

Finally, the court **DENIES AS MOOT** Walmart's motion to strike certain paragraphs of the declaration Ms. Robinson submitted in opposition to summary judgment because the court has relied on only admissible and material evidence in ruling on Walmart's motion for summary judgment.

## I.    MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Walmart moves for judgment on the pleadings as to any claim for race discrimination in discipline. (Doc. 32 at 1–2). In support of its argument, Walmart contends that Ms. Robinson's complaint does not allege facts related to any employment event other than her termination. (Doc. 35 at 20). Walmart's argument is belied by the face of the complaint.

Ms. Robinson's complaint alleges that her supervisor issued multiple write-ups for deficient job performance and held her to a higher standard of policy compliance than Caucasian employees. (Doc. 1 at ¶¶ 12, 19, 21). And the first

count of Ms. Robinson's complaint specifically states that Walmart discriminated against her "because of her race with respect to the assessment of discipline. . . ." (Doc. 1 at ¶ 20).

In reviewing a Rule 12(c) motion for judgment on the pleadings, the court accepts "as true all material facts alleged in the non-moving party's pleading" and views "those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). Applying this standard, Ms. Robinson's allegations in the complaint regarding how Walmart disciplined her state a discrimination claim. Therefore, the court **DENIES** Walmart's partial motion for judgment on the pleadings.

## II.   MOTION TO STRIKE

Before turning to the merits of Walmart's motion for summary judgment, the court examines Walmart's motion to strike paragraphs 17, 18, 35, 38, 41, 45, 46, 47, and 48 of Ms. Robinson's declaration that she submitted in opposition to summary judgment. (Doc. 44). Walmart contends that these paragraphs contain information that is not based on personal knowledge or is conclusory or speculative. (*Id.*). Ms. Robinson counters that the challenged portions of the declaration are admissible for a variety of reasons. (Doc. 46). Some of the challenged portions to the declaration appear in admissible form in Ms. Robinson's deposition. To the extent that is the case, the court has considered any relevant

testimony.  Otherwise, consistent with its obligation under Federal Rule of Civil Procedure 56, the court has not considered any inadmissible or immaterial portions of the declaration.

Accordingly, the court **DENIES** as **MOOT** Walmart's motion to strike paragraphs 17, 18, 35, 38, 41, 45, 46, 47, and 48 of Ms. Robinson's declaration. (Doc. 48).

### III.   MOTION FOR SUMMARY JUDGMENT

<u>1.</u>   <u>Background</u>

In considering a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

In 2005, Walmart hired Ms. Robinson, an African-American, as a Staff Pharmacist to work at the Homewood, Alabama store. (Doc. 33-1 at 9).  In 2006, Walmart promoted Ms. Robinson to Pharmacy Manager, a position she held until 2012 when she asked to step down and return to her position as a Staff Pharmacist. (*Id.* at 17).  Thereafter, Ms. Robinson served as a Staff Pharmacist until Walmart terminated her employment in 2018.  (Doc. 33-39 at 7–9).

In 2016, Zachary Martin, a Caucasian male in his thirties, became the Pharmacy Manager at the Homewood Walmart.  (Doc. 33-4 at ¶ 4).  Ms. Robinson

reported to Mr. Martin, and Mr. Martin reported to Market Health and Wellness Director Billy Lawley.  (Doc. 33-5 at ¶¶ 4, 7).  Mr. Lawley reported to Chad Souers, the Market Manager for the area that included the Homewood store.  (Doc. 33-2 at 4; Doc. 33-3 at 3–4).

Mr. Martin and Ms. Robinson were the only pharmacists assigned to the Homewood store, and each worked a 12-hour shift.  (Doc. 33-3 at ¶ 7).  They were subject to the same policies and procedures which, among other things, included a Coaching for Improvement Policy.  (Doc. 33-7).  The Coaching for Improvement Policy is designed to help employees identify, acknowledge, and change unacceptable job performance through three levels of coaching: first written coaching, second written coaching, and third written coaching.  (*Id.* at 1–2).  An employee may receive only one of each level of coaching in a 12-month period, and a coaching remains active for one year.  (*Id.*).  Supervisors have discretion to determine the appropriate level of coaching or to skip certain levels of coaching, depending on the circumstances of a particular situation.  (*Id.*).  If an employee's job performance warrants a level of coaching and the employee already has received a third written coaching within the previous 12 months, the employee may be terminated.  (Doc. 33-7 at 2).

In August 2016, Mr. Martin issued a first written coaching to Ms. Robinson because she did not follow pharmacy procedures for returning expired prescription

medication ("GENCO" returns).  (Doc. 33-4 at ¶ 21; Doc. 33-15).  Under previous managers, Walmart required pharmacists to complete GENCO returns by the 15th of every month.  (Doc. 33-1 at 31–32).  Shortly after Mr. Martin took over, Walmart implemented a new policy, requiring pharmacists to submit GENCO returns on the second Sunday of a given month instead of by the 15th day of every month.  (Doc. 33-1 at 32; Doc. 33-4 at ¶¶ 12–18; Doc. 33-12; Doc. 34-10).  During her shift on Sunday, August 14, 2016, Ms. Robinson did not submit the GENCO returns.  (Doc. 33-1 at 34; Doc. 33-4 at ¶ 21).

In her deposition, Ms. Robinson testified that she was unaware of the new GENCO procedure until Mr. Martin disciplined her, but she previously acknowledged in emails that she read notes from the store visit where management outlined the updated policy.  (Doc. 33-1 at 3;  Doc. 33-12; Doc. 33-4 at ¶¶ 14–16, 18).  And in a July 14, 2016 email to Mr. Martin summarizing notes from a store meeting, Ms. Robinson stated: "Out of date processing on the 2nd weekend of month (have their drugs pull[ed] and counted)."  (Doc. 33-13).

The day after Mr. Martin issued the GENCO coaching, Ms. Robinson emailed Mr. Lawley and requested a meeting to discuss the write-up.  (Doc. 33-19 at 2). After the meeting, Ms. Robinson was under the impression that Mr. Lawley was going to talk to Mr. Martin about removing the written coaching from her record.  (Doc. 33-9 at 2).  Mr. Lawley testified that he reviewed Ms. Robinson's

first written coaching and determined that Ms. Robinson had notice of the GENCO requirements and saw no need to overturn the written coaching.  (Doc. 33-2 at 29).

In April 2017, Mr. Martin gave Ms. Robinson a second written coaching for allowing a visiting pharmacy technician to bring personal items into the pharmacy, in violation of Walmart policy.  (Doc. 33-4 at ¶ 37; Doc. 34-35 at 1, 3; Doc. 33-18).   Mr. Martin became aware of the incident after reviewing store video footage during his investigation into an unrelated matter. (Doc. 33-4 at ¶ 30).  The footage revealed that the technician brought a bag of personal items into the pharmacy while Ms. Robinson was the pharmacist on duty.  In accordance with Walmart policy, Mr. Martin disciplined Ms. Robinson for allowing the visiting technician to bring personal items into the pharmacy.  (Doc. 33-18).   Mr. Martin did not discipline the visiting pharmacy technician because she was not a Walmart employee, and Mr. Martin did not have authority to coach the technician for her independent violation of pharmacy protocol.  (Doc. 33-4 at ¶ 39).

After the second written coaching, Ms. Robinson realized that the first written coaching was still active.  (Doc. 33-9 at 2).  She emailed Mr. Souers and requested a meeting to discuss the first coaching.  (*Id.*; *see also* Doc. 33-1 at 42). During this meeting, Ms. Robinson also raised other complaints.  For instance, Ms. Robinson was upset that Mr. Martin had not disciplined the visiting technician for violating pharmacy policy.  (Doc. 33-1 at 42; Doc. 33-9 at 1).  Ms. Robinson also

complained that Mr. Martin had not submitted GENCO returns but was not disciplined and that Mr. Martin had been seen sleeping on the pharmacy floor. (Doc. 33-1 at 54; Doc. 33-9 at 1).  Several days after her meeting with Mr. Souers, Ms. Robinson emailed Mr. Souers and Mr. Lawley an undated picture of Mr. Martin lying on the pharmacy floor. (Doc. 33-1 at 44–45; Doc. 33-2 at 14).

Before Ms. Robinson's meeting with Mr. Souers, Mr. Lawley had in fact issued a first written coaching to Mr. Martin for failing to submit GENCO returns on time. (*See* Doc. 33-9 at 1; Doc. 34-31).  After Ms. Robinson's meeting with Ms. Souers, Mr. Lawley issued a second written coaching to Mr. Martin for not completing other medication returns. (Doc. 33-4 at ¶ 95; Doc. 34-31).  During this second coaching session, Mr. Lawley told Mr. Martin that someone reported that he had been lying on the pharmacy floor during his shift. (Doc. 33-2 at 14; Doc. 33-4 at ¶ 95).  Mr. Martin told Mr. Lawley that on one occasion, he felt ill during his shift and had lain down between tasks, but that he was never asleep. (Doc. 33-4 at ¶¶ 95–101).  Mr. Lawley did not issue a separate written coaching for Mr. Martin's lying on the floor. (Doc. 33-2 at 14; Doc. 39-3 at 1).  Instead, he decided to address the concern as part of Mr. Martin's second coaching session. (*Id.*)

In November 2017, Mr. Martin issued a third written coaching to Ms. Robinson because she documented that she had cleared a patient's flagged medication as "doctor approved" when it was not. (Doc. 33-21).  Walmart's Drug

Utilization Review ("DUR") Policy requires that a pharmacist review a patient's prescribed medication with additional scrutiny when the pharmacist receives certain color-coded alerts.   (Doc. 34-36).   For example, a "red alert" notifies a pharmacist of a possible drug allergy, and a pharmacist, in her judgment, must contact the prescribing physician, counsel the patient, or both.  (Doc. 33-4 at ¶ 49; Doc. 34-36 at 3).  The pharmacist must then select the type of intervention from a drop down box in the computer system.  (Doc. 34-36 at 3).  One choice from the drop down box is "Dr. Approved."  (Doc. 33-4 at ¶ 50).  Another choice is "other," for which the pharmacist must type in the reason for overriding the alert.  (*Id.*; Doc. 34-36 at 3).

Mr. Martin received a call from a patient that prompted him to review the patient's record for a possible DUR violation.   (Doc. 33-4 at ¶¶ 52–54).   Mr. Martin discovered that Ms. Robinson filled a hydrocodone prescription for a patient even though the patient was allergic to codeine.   (*Id.*).   Ms. Robinson marked a DUR override for the patient's hydrocodone as "Dr. Approved," but the comments explained that Ms. Robinson had counseled the patient only.  (*Id.*).  Ms. Robinson admitted that she did not speak to anyone at the patient's physician's office or get approval from the doctor to dispense the medication despite the allergy alert and that she did not select the right DUR code. (Doc. 33-1 at 47, 50,

52).   Mr. Martin issued the third written coaching because Ms. Robinson tagged the DUR override incorrectly.  (Doc. 33-4 at ¶ 57; Doc. 33-21).

Around the same time Ms. Robinson received her third written coaching, Walmart's pharmacies began an initiative to improve customer adherence with certain maintenance medications like those that treat high cholesterol, high blood pressure, and diabetes.  (Doc. 33-4 at ¶¶ 63–64).  In early December 2017, Mr. Martin emailed Ms. Robinson and instructed Ms. Robinson on the use of "Teal Cards" to address patient compliance.  Under this approach, a pharmacist filling a prescription would place a plastic card in an external bag holding the medication if a patient had not refilled the medication regularly and had an adherence percentage below a particular number.  (Doc. 33-4 at ¶ 66; Doc. 34-23).  The existence of the card alerted the pharmacist on duty to counsel the patient about medication adherence.  (Doc. 33-4 at ¶ 66).  Between December and late March 2018, Mr. Martin emailed Ms. Robinson two more times instructing her on the use of the Teal Cards and requesting that she document incidents where she elected against counseling a patient with a Teal Card in their prescription. (Doc. 33-4 at ¶ 70; Doc. 33-24; Doc. 33-25).

In late March 2018, Walmart's Pharmacy Clinical Services Manager audited the Homewood store's Teal Card program.  (Doc. 33-4 at ¶ 72; Doc. 34-26).  After the audit, the Pharmacy Clinical Services Manager emailed Mr. Lawley and Mr.

Martin to inform them that for the days he audited, Ms. Robinson did not have an opportunity to use a Teal Card, but she had missed immunization prescreens during that time.  (Doc. 33-4 at ¶ 73; Doc. 34-26).  The Clinical Services Manager asked Mr. Martin to track Ms. Robinson's Teal Card and immunization prescreens in the coming weeks.  (Doc. 33-4 at ¶ 76; Doc. 33-28).

Between March 20, 2018 and April 5, 2018, Mr. Martin determined that Ms. Robinson had thirteen opportunities to use Teal Cards but had not done so on any of those occasions, and she had not issued any immunization prescreens.  (Doc. 33-4 at ¶ 76; Doc. 33-27; Doc. 33-28).  On April 5, 2018, Mr. Martin met with Ms. Robinson and told her that the thirteen missed Teal Card opportunities warranted a written coaching because she had received multiple reminders about following the procedure but did not do so.  (Doc. 33-4 at ¶ 85; Doc. 33-27).  Even though a violation of the Teal Card procedure is not itself a terminable offense, because Ms. Robinson already had three active coachings, Mr. Martin terminated Ms. Robinson's employment for "misconduct with coachings" pursuant to the terms of the Coaching for Improvement Policy.  (Doc. 33-49; *see also* Doc. 33-2 at 17; Doc. 33-4 at ¶ 86; Doc. 33-27; Doc. 33-7 at 2).

Ms. Robinson was 51-years old when she lost her job.  (Doc. 1 at ¶ 24; Doc. 1-1 at 2).  Walmart hired a 37-year old African-American to fill Ms. Robinson's position.  (Doc. 33-2 at 28; Doc. 33-4 at ¶ 113; Doc. 34-48).

2.    Discussion

Walmart moves for summary judgment on all of Ms. Robinson's claims, arguing that Ms. Robinson has failed to present evidence creating genuine disputes of fact about whether it discriminated against her on the basis of race or age.

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Hamilton*, 680 F.3d at 1318.   "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor."  *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

A.    *Title VII/§ 1981 Claim*

In Count One of her complaint, Ms. Robinson alleges that Walmart discriminated against her because of her race "with respect to discipline, including termination" in violation of Title VII and § 1981.  (Doc. 1 at ¶ 20).

Title VII prohibits an employer from discriminating against a person based on race.   42 U.S.C. § 2000e-2(a)(1).   Section 1981 prohibits intentional discrimination "in private employment on the basis of race."  *Johnson v. Ry. Express Agency*, 421 U.S. 454, 4659–60 (1975).   As a general rule, claims

brought under Title VII and § 1981 "are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). A plaintiff may establish discrimination under Title VII and § 1981 through direct evidence, circumstantial evidence, or statistical proof. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Here, Ms. Robinson has not presented direct evidence of discrimination, and the record contains no statistical evidence of discrimination. Therefore, the court must determine whether Ms. Robinson presented sufficient circumstantial evidence for a reasonable jury to find that Walmart discriminated against her because of her race. To do this, Ms. Robinson relies on the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (*See* Doc. 40 at 10–11).

Under that test, a plaintiff must first make out a prima facie case of discrimination by showing "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019). If the plaintiff can establish a prima facie case of discrimination, the burden shifts to the defendant to present evidence showing a legitimate, non-discriminatory reason for the adverse employment

action.  *Id.* at 1221. If the defendant can satisfy that burden, the plaintiff must present evidence from which a reasonable jury could find that the proffered reason was pretext for unlawful discrimination.  *Id.*  To establish that a reason was pretextual, the plaintiff must present evidence that "the reason was false, and that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007).

Walmart argues that Ms. Robinson cannot establish a prima facia case of race discrimination because written employment actions do not constitute adverse employment actions and because Mrs. Robinson has not demonstrated that Walmart treated her differently than similarly-situated employees.  (Doc. 35 at 23–24, 27–33).  Even assuming that the written employment actions are adverse actions, the court finds that Walmart is entitled to summary judgment because Ms. Robinson failed to establish that Walmart treated her differently than similarly situated employees.

A plaintiff relying on the *McDonnell Douglas* burden-shifting framework to establish a race discrimination claim must show that she and her comparators are "similarly situated in all material respects."  *Lewis*, 918 F.3d at 1224.  In most cases, adequate comparators are those who have been "engaged in the same basic conduct (or misconduct), . . . subject to the same employment policy, guideline, or

rules, . . . under the jurisdiction of the same supervisor, . . . and [] share the [same] employment or disciplinary history" as the plaintiff.  *Lewis*, 918 F.3d at 1227–28. In this case, Ms. Robinson offers Mr. Martin (doc. 40 at 10–11), and—possibly—the visiting pharmacy technician (*id.* at 8, n.1) as comparators. Neither comparator is adequate.

Ms. Robinson appears to suggest that Walmart treated her differently than the visiting technician who brought personal items into the pharmacy in violation of company policy but was not disciplined like Ms. Robinson was.  (*See* Doc. 40 at 8, n. 1).  Putting aside the fact that the visiting technician is African-American and therefore not outside Ms. Robinson's protected class, the technician is not a proper comparator.  Although Ms. Robinson and the technician were subject to the same workplace policy, they share no other characteristics.  Importantly, they did not work for the same employer and did not have the same supervisor.  (Doc. 33-4 at ¶ 39–40).  In fact, the undisputed evidence is that Mr. Martin did not have the authority to discipline the visiting technician.  (Doc. 33-4 at ¶ 39).  Accordingly, Ms. Robinson and the visiting technician are not similarly situated in "all material respects," and their difference in treatment does not raise an inference of intentional discrimination.  *Lewis*, 918 F. 3d at 1229.

Ms. Robinson's comparison to Mr. Martin also fails. Ms. Robinson claims that Walmart treated her less favorably than Mr. Martin with respect to discipline

and termination because she received written coachings and was fired while Mr. Martin was not disciplined or terminated for sleeping on the pharmacy floor. (Doc. 40 at 10–11).

First, with respect to discipline, Ms. Robinson and Mr. Martin did not engage in the same basic misconduct. Ms. Robinson received a written coaching for allowing a pharmacy technician to bring prohibited items into the pharmacy and for not properly entering a DUR code. (Doc. 33-18; Doc. 33-21). Mr. Martin slept on the pharmacy floor. (Doc. 33-29 at 1–2). And "[a]n employer is well within its rights to accord different treatment to employees who are differently situated in 'material respects'—*e.g.*, who engaged in different conduct . . . ." *Lewis*, 918 F.3d at 1228.

Moreover, Ms. Robinson and Mr. Martin did not share a supervisor. Mr. Martin reported to Mr. Lawley, and Ms. Robinson reported to Mr. Martin. (Doc. 33-4 at ¶¶ 4, 7). "Although not dispositive," the fact that Mr. Lawley was responsible for disciplining Mr. Martin while Mr. Martin was responsible for disciplining Ms. Robinson is a "meaningful distinction." *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1248 (11th Cir. 2020); *see also Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1312 (11th Cir. 1998) ("Different supervisors may have different management styles that—while not determinative—could account for the disparate disciplinary treatment that employees experience.").

With respect to Ms. Robinson's termination, Mr. Martin likewise is not a valid comparator.  Mr. Martin terminated Ms. Robinson's employment pursuant to Walmart's Coaching for Improvement Policy for repeated Teal Card violations while having three active written coachings.  (Doc. 33-49; *see also* Doc. 33-2 at 17; Doc. 33-4 at ¶ 86; Doc. 33-27; Doc. 33-7 at 2).  Again, and as explained above, *see supra* p. 16, Mr. Martin did not engage in similar conduct, and he reported to a different supervisor.  In addition, Ms. Robinson has not shown that she and Mr. Martin shared the same disciplinary history.  She has pointed to no evidence that Mr. Martin had three active written coachings and then engaged in any conduct (much less similar conduct) that warranted a level of coaching subjecting him to termination.  Accordingly, Ms. Robinson has not presented evidence creating a genuine dispute about whether she and Mr. Martin are "sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'"  *Lewis*, 918 F.3d at 1228 (citing *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338, 1355 (2015)).  Therefore, Ms. Robinson cannot establish a prima facie case of race discrimination.

But even if she could establish a prima facie case of race discrimination, Ms. Robinson has presented no evidence from which a reasonable jury could infer that Walmart's articulated reasons for her coachings and termination are false and pretext for unlawful discrimination.  *See Smith*, 644 F.3d at 1326; *Springer*, 509

F.3d at 1349.  Ms. Robinson does not argue that any of Walmart's legitimate, non-discriminatory reasons for its actions are false.  (*See generally* doc. 40 at 10–11).  Rather, she claims that Walmart's proffered reasons for disciplining her and terminating her employment are pretext for race discrimination because Walmart did not discipline Mr. Martin for sleeping on the pharmacy floor.  (*Id.*).  This is the same evidence that Ms. Robinson offered in support of her prima facie case.

A plaintiff may use evidence "necessary and proper to support" a prima facie case to show that an employer's explanations for its conduct are pretextual.  *Lewis*, 918 F.3d at 1229.  However, as explained above, *see supra* pp. 15–17, Walmart's decision to treat Mr. Martin differently than Ms. Robinson does not raise an inference of discriminatory intent.  Therefore, Ms. Robinson has not presented evidence from which a reasonable jury could infer that Walmart's true reason for disciplining her and terminating her employment was racial discrimination.  Therefore, Walmart is entitled to judgment as a matter of law on Ms. Robinson's Title VII and § 1981 claims of race discrimination.

### B.    ADEA Claim

In Count Two of her complaint, Ms. Robinson alleges that Walmart discriminated against her because she was 51-years old at the time of her termination. (Doc. 1 at ¶ 24).

Under the ADEA, an employer may not discriminate against an employee

who are is least forty years old on the basis of her age.  29 U.S.C. § 623(a)(1).  As in the race discrimination context, when, as here, a plaintiff relies on circumstantial evidence to make that showing, the court evaluates the claim under the *McDonnell Douglas* burden shifting framework.  *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015).

For purposes of summary judgment, Walmart concedes that Ms. Robinson can establish a prima facie case of age discrimination.  (Doc. 35 at 23 n. 3).  Therefore, to survive summary judgment, Ms. Robinson must show that Walmart's articulated, non-discriminatory reason for terminating her employment is pretext for unlawful age discrimination.  *Liebman*, 808 F.3d at 1298.  In this regard, Ms. Robinson has the "burden of persuasion . . . to proffer evidence sufficient to permit a reasonable factfinder to conclude that the discriminatory animus was the 'but-for' cause of the adverse employment action."  *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

Where an employer justifies termination based on a work rule violation, a plaintiff may prove pretext by showing "either that [s]he did not violate the work rule or that, if [s]he did, other employees not within the protected class who engaged in similar acts were not similarly treated."  *Delgado v. Lockheed-Georgia*

*Co.*, 815 F.2d 641, 644 (11th Cir. 1987) (quotation marks omitted).  Ms. Robinson cannot sustain her burden.

Walmart terminated Ms. Robinson because when Mr. Martin coached Ms. Robinson for Teal Card violations, she already had three active written coachings which subjected her to termination under the Coaching for Improvement Policy. Ms. Robinson does not argue that she failed to use Teal Cards consistently.  (*See generally* doc. 40).  And she has pointed to no evidence that Mr. Martin failed to comply with the Teal Card policy or even if he had, that he had three active written warnings that would have made his susceptible to termination.

Ms. Robinson appears to suggest that Walmart's proffered reason for her termination is pretext because she received a written coaching for allowing a visiting technician to bring prohibited items into a secure area of the pharmacy, but Mr. Martin, her younger supervisor, was not disciplined for sleeping on the pharmacy floor.  (Doc. 40 at 13).   According to Ms. Robinson this written coaching "advanced [her] towards discharge," while Mr. Martin received more lenient treatment for what she describes as a similar offense which allowed him to remain employed.  (*Id.*).  Again, and as explained above with respect to her race discrimination claims, *see supra* pp. 15–17, Ms. Robinson's conduct and Mr. Martin's conduct in this regard is too dissimilar for a reasonable juror to infer that Walmart treated Ms. Robinson differently because of her age.

In sum, Ms. Robinson has offered no evidence to suggest that age was the "but for" cause of her termination.

Therefore, Walmart is entitled to judgment as a matter of law on Ms. Robinson's ADEA claim.

## IV.   CONCLUSON

The court **DENIES** Walmart's partial motion for judgment on the pleadings and its motion to strike portions of Ms. Robinson's declaration.   The court **GRANTS** Walmart's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of Walmart on all of Ms. Robinson's claims.

**DONE** and **ORDERED** this January 27, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE